**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                  :
WAYNE G. DOBSON,                  :
                                  :
        Petitioner,               :      Civil Action No. 11-2924 (JBS)
                                  :
            v.                    :      **OPINION**
                                  :
KAREN BALICKI,                    :
                                  :
        Respondent.               :
_____:


**APPEARANCES:**

Wayne G. Dobson, _Pro Se_
437073
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

Robin A. Hamett, Assistant Prosecutor
Camden County Prosecutor's Office
25 North Fifth Street
Camden, NJ 08102
        Attorney for Respondent


**SIMANDLE, Chief Judge**

        Petitioner, Wayne G. Dobson, submitted this petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and

Respondent submitted an answer to the petition (Docket Item 13),

with the available state court record. For the following

reasons, the petition will be denied.

## BACKGROUND

The relevant facts and procedural background are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division"), in Petitioner's appeal of his post-conviction relief ("PCR") motion.[1]

> The following facts are pertinent to our decision. Defendant was charged under Camden County Indictment No. 01-06-1802 with first degree murder, N.J.S.A. 2C:11-3(a)(1) (counts one and two); first degree robbery, N.J.S.A. 2C:15-1 (count three); second degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and third degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count five). On September 6, 2002, defendant pled guilty to count one, which was amended to charge first degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1).

> At the plea hearing, the court asked defendant if he understood that he had been charged with recklessly causing the death of Louis Carter (Carter) under circumstances manifesting extreme indifference to the value of human life. Defendant said that he understood the charge. Defendant stated that he had discussed the plea with his attorney and his attorney had answered all of defendant's questions. Defendant additionally stated that he was satisfied with the services that his attorney had provided to him.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

Defendant then provided the court with a factual basis for his plea. He stated that on December 1, 2000, he came in contact with Carter. Defendant acknowledged that he was in possession of a handgun and it discharged. He admitted that, in his encounter with Carter, he acted recklessly, without regard to the consequences of "who got hurt or what happened[.]" Defendant stated that, when the gun was discharged, Carter was struck by a bullet and died.

On December 6, 2002, the court sentenced defendant. The court found aggravating factor three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense); six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The court also found mitigating factor six, N.J.S.A. 2C:44-1(b)(6) (defendant was willing to make restitution). The court found that the aggravating factors substantially outweighed the mitigating factors.

The court sentenced defendant in accordance with his plea agreement to twenty-three years of incarceration, with a period of parole ineligibility, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. The court ordered that the sentence be served concurrently with a sentence previously imposed under Camden County Indictment No. 01-06-1898.

Defendant appealed from the judgment of conviction and challenged his sentence. The appeal was heard on our excessive sentence calendar. We affirmed defendant's sentence. *State v. Dobson*, No. A-4513-02 (App. Div. Sept. 17, 2003). Defendant thereafter sought review of our judgment by filing a petition for certification with the Supreme Court. The Court denied the petition. *State v. Dobson*, 179 N.J. 309, 845 A.2d 134 (2004).

(Ra 25, *State v. Dobson*, A-5120-06T4 (May 4, 2010), at pp. 2-4).

Petitioner filed a motion for post-conviction relief ("PCR"), which was denied in a written opinion dated February 6, 2007, by the trial court. The Appellate Division affirmed the denial of PCR on May 4, 2010 (Ra 25) and the New Jersey Supreme Court denied certification on July 19, 2010 (Ra 29).

Petitioner filed this habeas petition thereafter, and was informed of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). Respondent answered the petition and filed the relevant state court record. This Court has reviewed all submissions.

<u>**PETITIONER'S CLAIMS**</u>

In his petition (Docket Item 1), Petitioner sets forth three grounds for habeas relief: (1) denial of due process where plea was not voluntary and there was no adequate factual basis; (2) ineffective assistance of counsel; and (3) unconstitutional sentence imposed in violation of the Sixth Amendment. (Petition, ¶ 12).

Respondent argues that Petitioner procedurally defaulted on Grounds One and Three, and that he failed to exhaust. Alternatively, Respondent argues that as to the merits of his petition, Petitioner is not entitled to habeas relief. (Answer, Docket Item 13).

**DISCUSSION**

**A.    Section 2254 Cases**

As amended by the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent

part:

> The Supreme Court, a Justice thereof, a circuit judge, or
> a district court shall entertain an application for a writ
> of habeas corpus in behalf of a person in custody pursuant
> to the judgment of a State court only on the ground that
> he is in custody in violation of the Constitution or laws
> or treaties of the United States.

28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits in state

court proceedings, the writ shall not issue unless the

adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the
> United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence
> presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court

precedent "if the state court applies a rule that contradicts

the governing law set forth in [Supreme Court] cases," or "if

the state court confronts a set of facts that are materially

5

indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). *Id.* at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. *See id.* at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. *See Matteo v. Superintendent*, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." *Priester v. Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004) (citing *Early v. Packer*, 537 U.S. 3 (2002); *Woodford v. Visciotti*, 537 U.S. 19 (2002)), *cert. denied*, 543 U.S. 1093 (2005).

Further, "Habeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott*, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and set forth "facts supporting each of the grounds thus specified." See 28 U.S.C. § 2254 Rule 2(c) (amended Dec. 1, 2004).

**B.    Ground One**

In Ground One of his petition, Petitioner argues that the trial court violated his constitutional rights by accepting his "plea of guilty to the amended count of aggravated manslaughter, where there was no adequate factual basis established to substantiate the elements under that offense, and where the plea was not voluntarily and intelligently made with sufficient awareness of the relevant circumstances and likely consequences." (Petition, ¶ 12).

Petitioner raised this claim in his PCR motion. The PCR court found that Petitioner's claim was nothing more than a "bald assertion," and noted that "Petitioner admitted in open Court he understood the consequences of his plea and was pleading guilty voluntarily." (Ra 14 at p. 14). Later, the court found that "Petitioner admitted that he caused the death of the victim and acted recklessly with the handgun in doing so, to the point of manifesting extreme indifference for human life. Those are the elements of aggravated manslaughter." (Ra 14 at p. 43).

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 242 (1969) (a guilty plea is invalid only if it is not the result of the defendant's knowing and voluntary waiver of his/her rights or if the offered plea has no factual basis). "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial[,]" including the defendant's privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. *Boykin*, 395 U.S. at 243. The voluntariness of a plea "can be determined only by

considering all of the relevant circumstances surrounding it."

*Brady v. United States*, 397 U.S. 742, 749 (1970). Relevant

circumstances include the petitioner's statements during the

plea colloquy:

> [T]he representations of the defendant, his lawyer,
> and the prosecutor at [the plea] hearing, as well as
> any findings made by the judge accepting the plea,
> constitute a formidable barrier in any subsequent
> collateral proceedings. Solemn declarations in open
> court carry a strong presumption of verity. The
> subsequent presentation of conclusory allegations
> unsupported by specifics is subject to summary
> dismissal, as are contentions that in the face of the
> record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

In this case, Petitioner's plea, as summarized in the PCR

court's Opinion denying relief (Ra 15), is reproduced below, in

relevant part:

> THE COURT: Sir, you are charged under Count One, on
> December 1, 2000, in the City of Camden with
> recklessly causing the death of Louis Carter under
> circumstances manifesting extrerne indifference to
> the value of human life and that's contrary to New
> Jersey Statute 2C:11-4a(1). Sir, do you understand
> what you are charged with?
> DEFENDANT: Yes.
> THE COURT: Have you had enough time to discuss the
> case with your attorney?
> DEFENDANT: Yes.
> THE COURT: Has he answered all of your questions?
> DEFENDANT: Yes.
> THE COURT: And are you satisfied with his services
> to you, sir?
> DEFENDANT: Yes.
>                          * * *

```
THE COURT: Again sir, has anyone forced you to plead
guilty?
DEFENDANT: No.
THE COURT: Anybody threaten you in anyway, sir?
DEFENDANT: No.
THE COURT: Have you taken any medication, any drugs
or alcohol or anything that would affect your ability
to think clearly here today?
DEFENDANT: No
TIIE COURT: In other words, you understand exactly
what you're doing by pleading guilty, sir?
DEFENDANT: Yes.
```

(Ra 15 at pp. 13-14, Rta 1 at 8:9-25; 16:25, 17:1-12).

A review of the plea transcript reveals that the state
courts were not unreasonable in their determination that
Petitioner's plea was voluntary and intelligently submitted.
Petitioner thoughtfully considered the judge's questions and
understood to what he was pleading guilty. This Court sees no
reason to upset the findings of the state court in accepting the
plea, and finds no violation of Petitioner's constitutional
rights. He has not demonstrated that the state courts'
acceptance of his plea was contrary to, or involved an
unreasonable application of, clearly established federal law,
or based upon an unreasonable determination of the facts in light
of the evidence presented. Petitioner is not entitled to relief
on this claim.

**C.    Ground Two**

1.    Standard for Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.  *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland. *See Berryman v. Morton*, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

The *Strickland* two-part standard applies to ineffective assistance claims arising out of the guilty plea process. *See Hill v. Lockhart*, 474 U.S. 52, 57-9 (1985). In the context of guilty pleas, the first element of the *Strickland* test remains "nothing more than a restatement of the standard of attorney

competence." *Hill*, 474 U.S. at 58. The "prejudice" requirement, "on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. *See also Weeks v. Snyder*, 219 F.3d 245, 257 (3d Cir.), *cert. denied*, 531 U.S. 1003 (2000).

2. <u>Petitioner's Claims</u>

Petitioner argues in his petition that he was denied the effective assistance of counsel when: (1) counsel failed to consult adequately with the defendant in preparing his case, and failed to investigate and pursue a passion provocation defense; (2) counsel failed to investigate and pursue a defense based on imperfect self-defense; (3) counsel failed to contact a key witness who could have aided in the defense; and (4) counsel failed because he did not argue for mitigating factor four at the time of sentencing. (Petition, ¶ 12).

These claims were raised in Petitioner's PCR motion. Citing and summarizing *Strickland*, the PCR court found that Petitioner

did not have ineffective assistance of counsel (Ra 15 at p. 15).

The PCR court's written opinion, sets forth the reasoning:

> In his pro se brief, Petitioner alleges he thinks
> trial counsel should have investigated the potential
> defenses of passion/provocation manslaughter,
> claiming there was an altercation between him and the
> victim. Again, Petitioner did not include an
> affidavit supporting this assertion. Also, while
> trial counsel has a duty to make reasonable
> investigations, he was not required to pursue
> everything Petitioner alleged. If trial counsel
> believed Petitioner's self-proclaimed account of
> self-defense would not be helpful to the defense
> strategy, he was not obliged to pursue it. The record
> indicates that Petitioner initiated the altercation
> with the victim, followed the victim to the victim's
> front porch, and escalated the altercation by pulling
> out a handgun. Petitioner would have had to testify
> at trial to raise the defense of self-defense. Trial
> counsel may have thought that a jury would not find
> Petitioner's testimony credible, since by
> testifying, the jury would find out that Petitioner
> had a prior conviction of aggravated assault and
> robbery along with the fact that his testimony would
> have been self-serving. Looking at the totality of the
> circumstances, without the advantage of hindsight,
> trial counsel appears to have made a reasonable
> professional judgment in not pursuing a self-defense
> theory or seeking a passion/provocation plea.

> Petitioner also asserts in his pro se brief,
> trial counsel should have investigated and
> interviewed certain witnesses that would have helped
> his theory of self-defense. However, Petitioner did
> not attach any affidavits from those witnesses,
> explaining what they would have said. Petitioner
> asserts in his brief that Mark Wise would have said
> Mr. Adams (victims' friend) told Mr. Wise, after the
> homicide, he had drugs on him and that was why he gave
> a statement alleging Petitioner robbed the victim.
> Also, Petitioner alleges further investigation of Ms.
> Campbell should have been done, since she said in her
> statement to police the victim was using drugs at the

time of his homicide. Petitioner asserts this is
relevant as to whether he could have asserted
self-defense. Again, trial counsel is not required to
pursue what he believes are fruitless stories. Since
Ms. Campbell gave a statement that is contained in the
discovery, trial counsel most likely read it and made
a strategic decision that it was not strong enough to
support a valid defense.

The lack of affidavits coupled with the strong
presumption trial counsel rendered adequate
assistance and to have made all significant decisions
in the exercise of reasonable professional judgment,
Petitioner cannot show that counsel made a "gross
error." In fact, the record shows that in large part,
counsel's recommendation was a wise choice, since the
Petitioner was facing significantly more prison time
if he went to trial and was convicted. The plea bargain
called for a concurrent sentence to the sentence he
was already serving, and increased his sentence only
four years for the crime of aggravated manslaughter.

Additionally, the record shows that during the
plea hearing, through its own inquiry, the Court
assured that Petitioner's trial attorney had answered
all of Petitioner's questions and that Petitioner was
satisfied with his legal representation. This would
have been an opportune time for Petitioner to express
his displeasure with his trial counsel. Petitioner
did not express he did not understand the implications
of pleading, nor did he express that he wished to go
to trial. Also, the Court specifically questioned
Petitioner about his satisfaction with the assistance
provided to him by counsel. The plea transcript
indicates that Petitioner was satisfied with his
counsel . . . .

(Ra 15 at pp. 18-20). The Appellate Division affirmed the PCR

court's "thorough and comprehensive opinion," and citing

*Strickland*, added "defendant failed to establish that his

attorney conducted an inadequate investigation of the matter,

thereby denying him the effective assistance of counsel." (Ra 25 at p. 8).

This Court finds no reason to upset the plea entered by Petitioner based on ineffective assistance of counsel. Besides the examination conducted by the state courts as to Petitioner's arguments, Petitioner himself stated at his plea that he was "satisfied with [his attorney's] services" and that his attorney answered all of his questions. (Rta 1 at 8:18-25 – 9:1). Further, Petitioner has not shown that counsel's decisions in handling his case as to defenses and witnesses were anything other than sound trial strategy. Finally, this Court agrees that Petitioner has not demonstrated a reasonable probability that he wouldn't have pled guilty had counsel performed differently, especially considering the sentencing consequences that he faced had he gone to trial.

The Court is satisfied that none of the ineffective assistance of counsel claims presented by Petitioner in Ground Two of his petition are sufficient to warrant habeas relief. As the state courts correctly relied on *Strickland*, the state courts' decisions were neither contrary to, nor involved an unreasonable application of, clearly established federal law. An examination of the record also reveals no evidence that they

were based on an unreasonable determination of the facts presented in the state court proceedings. Petitioner is not entitled to relief on this ground.

**D.**   **Ground Three**

In Ground Three of his petition, Petitioner argues that he is entitled to habeas relief because the sentencing court "increased his sentence beyond the prescribed statutory maximum solely upon facts that were not admitted by the defendant or submitted to a jury and, as such, violates defendant's Sixth Amendment right to a jury trial." (Petition, ¶ 12).

This Court notes from the onset that a federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984); *see also* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Here, Petitioner was sentenced in accordance with state law pursuant to his plea agreement. Petitioner has not provided this Court with any justification to grant habeas relief and upset the state court proceedings.

However, to address Petitioner's claims more fully, this Court notes that in *Apprendi v. New Jersey*, 530 U.S. 466, 471, 490 (2000), pursuant to the Sixth Amendment right to trial by jury, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." 542 U.S. at 302 (internal quotations omitted).

In *State v. Natale* ("*Natale II*"), 184 N.J. 458 (2005), the New Jersey Supreme Court evaluated the constitutionality of the New Jersey sentencing scheme in light of the *Apprendi* line of cases, and found:

> Our Code provisions make clear that, before any
> judicial factfinding, the maximum sentence that can
> be imposed based on a jury verdict or guilty plea is
> the presumptive term. Accordingly, the "statutory
> maximum" for *Blakely* and *Booker* purposes is the
> presumptive sentence.

*Natale*, 184 N.J. at 484 (emphasis added). Because the Code's

system allowed for sentencing beyond the statutory maximum

presumptive term, the New Jersey Supreme Court found the system

unconstitutional and determined that the appropriate remedy

would be to follow the lead of *Booker* and abolish the presumptive

terms. "Without presumptive terms, the 'statutory maximum'

authorized by the jury verdict or the facts admitted by a

defendant at his guilty plea is the top of the sentencing range

for the crime charged, *e.g.*, ten years for a second-degree

offense." *Natale II*, 184 N.J. at 487 (citation omitted)

(emphasis added).

The Court of Appeals for the Third Circuit generally has

held that the rules announced in the *Apprendi* line of cases are

not applicable retroactively to cases on collateral review. *See

generally, United States v. Swinton*, 333 F.3d 481 (3d Cir.),

*cert. denied*, 540 U.S. 977 (2003) (holding that *Apprendi* does

not apply retroactively to cases on collateral review).

Similarly, the New Jersey Supreme Court has held that the rule

it announced in *Natale II* is applicable retroactively only to

19

cases in the direct appeal pipeline as of the date of that decision. *See Natale II*, 184 N.J. at 494 (holding that "'Pipeline retroactivity'-applying our holding to defendants with cases on direct appeal as of the date of this decision and to those defendants who raised *Blakely* claims at trial or on direct appeal-best balances principles of fairness and repose").

In this case, Petitioner's direct appeal concluded in 2004, prior to the decision in *Natale II*. *See State v. Dobson*, 179 N.J. 309, 845 A.2d 134 (2004). Thus, his claim that his sentence violated the mandates of *Blakely* is meritless, as *Blakely* would not apply to his case, which was not in the direct appeal "pipeline" as of the *Natale II* decision. Petitioner is not entitled to habeas relief on this claim.

**E.    Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his

constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

**CONCLUSION**

For the reasons set forth above, the Petition for a Writ of Habeas Corpus is denied. No certificate of appealability will issue.

An appropriate Order follows.


**s/ Jerome B. Simandle**
JEROME B. SIMANDLE, Chief Judge
United States District Court

Dated: **April 10, 2014**